IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Candace Louise Curtis | § | |
| Rik Wayne Munson | § | |
|     Private Attorneys General Plaintiffs | § | |
| | § | |
| vs. | § | |
| | § | Civil Action No._____ |
| Candace Kunz-Freed | § | |
| Albert Vacek, Jr. | § | |
| Bernard Lyle Mathews III | § | |
| Neal Spielman | § | **United States Courts** |
| Bradley Featherston | § | **Southern District of Texas** |
| Stephen A. Mendel | § | **FILED** |
| Darlene Payne Smith | § | |
| Jason Ostrom | § | JUL 0 5 2016 |
| Gregory Lester | § | |
| Jill Willard Young | § | David J. Bradley, Clerk of Court |
| Christine Riddle Butts | § | |
| Clarinda Comstock | § | |
| Toni Biamonte | § | Demand for Jury Trial |
| Bobbie Bayless | § | |
| Anita Brunsting | § | |
| Amy Brunsting | § | |
| Does 1-99 | § | |
|     Defendants in their individual capacities | § | |

## **VERIFIED COMPLAINT FOR DAMAGES**

1.    18 U.S.C. §1962 (c) Violations of the Racketeer Influenced Corrupt Organization Act involving multiple predicate acts that include both spoke and hub, and chain conspiracies.
2.    18 U.S.C. §1962 (d) Conspiracy to violate 18 U.S.C. §1962 (c)
3.    42 U.S.C. §1983 Substantive Due Process State Actor Conspiracy Against Civil Rights;
4.    42 U.S.C. §1985 Conspiracy to Deny Equal Protection of Law;
5.    18 U.S.C. §242 Conspiracy to deprive plaintiff of impartial forum;
6.    Breach of Fiduciary to the Public Trust;
7.    In Concert Aiding and Abetting Breach of Fiduciary both Public and Private;
8.    In Concert Aiding and Abetting Misapplication of Fiduciary; and,
9.    The right of claims provided at 42 U.S.C. §1988(a), 18 U.S.C. §1964 (c) and Rule 10b-5 Securities Exchange act of 1934 (17 C.F.R. §240.10b-5) and the right of private claims implied therefrom.

*This lawsuit raises concerns affecting the public interest*

## I. Verified Complaint

1.　　COMES NOW Rik Wayne Munson and Candace Louise Curtis, Plaintiffs in the above-styled and numbered cause, filing this Complaint against Defendants: Candace Kuntz-Freed, Albert Vacek Jr., Bernard Lyle Mathews III, Neal Spielman, Bradley Featherston, Stephen A. Mendel, Darlene Payne Smith, Jason Ostrom, Gregory Lester, Jill Willard Young, Christine Riddle Butts, Clarinda Comstock, Toni Biamonte, Bobbie Bayless, Anita Brunsting, Amy Brunsting and Does 1-99 (collectively, "Defendants") and in support thereof would show unto the Court the following matters and facts. Plaintiffs have personal knowledge and are also informed and believe and therefore aver that:

## II. Jurisdiction

2.　　Jurisdiction of this Honorable Court is invoked pursuant to 28 USC §1331 and 18 U.S.C. 1964 (c), as the substantive claims in this action raise federal questions arising under the Racketeering Influenced Corrupt Organizations Act (RICO) 18 U.S.C. §1961–1968 and the right of claims at 18 U.S.C. §1964(c) (civil remedy for RICO violations) and under 42 U.S.C. §§1983 and 1985 (remedies for color of official right and other Civil Rights violations).

3.　　This Court has supplemental jurisdiction over the state law and common law tort claims under 28 U. S. C. §1367(a), because the claims arise out of the same controversy, transactions and occurrences.

4.　　This Court has supplemental jurisdiction pursuant to the Federal Declaratory Judgment Act of 1946: Title 28 United States Code §§2201-2202, RICO 18 U.S.C. § 1965(a), (b), and (d); and Rules 57 and 65 of the Federal Rules of Civil Procedure; and pursuant to the general legal and equitable powers of this Court.

5.     This Court also has supplemental jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act[1] (15 U.S.C. §78aa) and exclusive jurisdiction over these claims, as this action also arises under Section 10(b) of the Exchange Act (15 U.S.C. §§78j(b) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) and the right of private claims implied therefrom.

6.     Venue is proper in the Southern District of Texas under 28 USC §1391(a)(1), because all of the events herein complained of occurred in the Southern District of Texas and elsewhere within the jurisdiction of the Court.

### III. Parties

7.     Plaintiffs incorporate by reference herein all allegations set forth above, and by this reference incorporate the same herein and makes each a part hereof as though fully set forth.

## DEFENDANTS

8.     Defendant Candace Kuntz-Freed is an adult resident citizen of Texas, with a principal place of business in Harris County, Texas and may be served with process at:

Candace Kuntz-Freed
9545 Katy Freeway, Suite 390,
Houston, Texas 77024

At all times material to this complaint Defendant Candace Kunz-Freed was a person, attorney with the Vacek Law firm, a partner in Vacek & Freed PLLC and also a Texas Notary Public, engaged in the practice of law at 11777 Katy Freeway, Suite 300 South, Houston, Texas 77079-9545.

9.     Defendant Albert Vacek Jr. is an adult resident citizen of Texas, with a principal place of business in Harris County, Texas and may be served with process at:

---

[1] Securities Exchange Act of 1934, 15 U.S.C. §§78a-78kk (1982)

Albert Vacek, Jr.
11777 Katy Freeway, Suite 300 South
Houston, Texas 77079

At all times material to this complaint Defendant Albert Vacek Jr. was a person, attorney with

the Vacek Law firm and a partner in Vacek & Freed PLLC engaged in the practice of law at

11777 Katy Freeway, Suite 300 South, Houston, Texas 77079.

10.     Defendant Bernard Lyle Mathews III. is an adult resident citizen of Texas, with a

principal place of business in Harris County, Texas and may be served with process at:

Bernard Lyle Mathews III
11777 Katy Freeway, Suite 300 South
Houston, Texas 77079

At all times relevant to this complaint Defendant Bernard Lyle Mathews III was a person, an

attorney with the Vacek Law firm a.k.a. Vacek & Freed PLLC, engaged in the practice of law at

11777 Katy Freeway, Suite 300 South, Houston, Texas 77079.

11.     Defendant Neal E. Spielman is an adult resident citizen of Texas, with a principal

place of business in Harris County, Texas and may be served with process at:

Neal E. Spielman
Griffin & Matthews
1155 Dairy Ashford, Suite 300
Houston, Texas 77079

At all times material to this complaint Defendant Neal E. Spielman was a person engaged in the

practice of law at 1155 Dairy Ashford, Suite 300, Houston, Texas 77079.

12.     Defendant Bradley Featherston is an adult resident citizen of Texas, with a

principal place of business in Harris County, Texas and may be served with process at:

Bradley E. Featherston
Featherston Tran PLLC
20333 State Highway 249, Suite 200
Houston, Texas 77070

At all times material to this complaint Defendant Bradley Featherston was a person engaged in the practice of law at The Mendel Law Firm, L.P., 1155 Dairy Ashford, Suite 104, Houston, Texas 77079.

13.    Defendant Stephen A. Mendel is an adult resident citizen of Texas, with a principal place of business in Harris County, Texas and may be served with process at:

Stephen A. Mendel
The Mendel Law Firm, L.P.
1155 Dairy Ashford, Suite 104
Houston, Texas 77079

At all times material to this complaint Defendant Stephen A. Mendel was a person engaged in the practice of law at 1155 Dairy Ashford, Suite 104 Houston, Texas 77079

14.    Defendant Darlene Payne Smith is an adult resident citizen of Texas, with a principal place of business in Harris County, Texas and may be served with process at:

Darlene Payne Smith
Crain, Caton & James
Five Houston Center, 17th Floor
1401 McKinney, Suite 1700
Houston, Texas 77010

At all times material to this complaint, Defendant Darlene Payne Smith was a person engaged in the practice of law at 1401 McKinney, Suite 1700, Houston, Texas 77010.

15.    Defendant Jason Ostrom is an adult resident citizen of Texas, with a principal place of business in Harris County, Texas and may be served with process at:

Jason Ostrom
Ostrom Morris, PLLC
6363 Woodway, Suite 300
Houston, Texas 77057

At all times relevant to this complaint, Defendant Jason Ostrom was a person engaged in the practice of law at 5020 Montrose Blvd., Suite 310, Houston, Texas 77079.

16.     Defendant Gregory Lester is an adult resident citizen of Texas with a principal place of business in Harris County, Texas and may be served with process at:

Gregory Lester
955 N Dairy Ashford Rd # 220
Houston, Texas 77079

At all times material to this complaint Defendant Gregory Lester was a person engaged in the practice of law at 955 N Dairy Ashford Rd # 220, Houston, Texas 77079.

17.     Defendant Jill Willard Young is an adult resident citizen of Texas, with a principal place of business in Harris County, Texas and may be served with process at:

Jill Willard Young
MacIntyre, McCulloch, Stanfield and Young LLP
2900 Weslayan, Suite 150
Houston, Texas 77027

At all times material to this complaint Defendant Jill Willard Young was a person engaged in the practice of law at 2900 Weslayan, Suite 150, Houston, Texas 77027.

18.     Defendant Christine Riddle Butts is an adult resident citizen of Texas, with a principal place of business in Harris County, Texas and may be served with process at:

Christine Riddle Butts
Harris County Civil Courthouse
201 Caroline
Houston, Texas 77002

At all times material to this complaint, Defendant Christine Riddle Butts was a person, an elected State official occupying the office of Judge of Harris County's Probate Court No. 4, a position of public trust charged with the preservation of public justice, liable in her individual capacity for the non-judicial acts complained of herein.

19.     Defendant Clarinda Comstock is an adult resident citizen of Texas, with a principal place of business in Harris County, Texas and may be served with process at:

Clarinda Comstock
Harris County Civil Courthouse
201 Caroline
Houston, Texas 77002

At all times material to this complaint, Defendant Clarinda Comstock was a person, an Associate

Judge of Harris County Probate Court No. 4, a position of public trust charged with the

preservation of public justice, liable in her individual capacity for the non-judicial acts

complained of herein.

20.     Defendant Toni Biamonte is an adult resident citizen of Texas, with a principal

place of business in Harris County, Texas and may be served with process at:

Toni Biamonte
Office of the Court Reporter
Harris County Civil Courthouse
201 Caroline
Houston, Texas 77002

At various times relevant to this Complaint, Defendant Toni Biamonte was a person, employed

as an Official Court Reporter at the Harris County Civil Courthouse, 201 Caroline, Houston,

Texas 77002.

21.     Defendant Bobbie Bayless is an adult resident citizen of Texas, with a principal

place of business in Harris County, Texas and may be served with process at:

Bobbie G. Bayless
2931 Ferndale
Houston, Texas 77098

At all times material to this complaint, Defendant Bobbie G. Bayless was a person engaged in

the practice of law at 2931 Ferndale Houston, Texas 77098.

22.     Defendant Anita Brunsting is an individual person, resident citizen of Victoria

County, Texas, not a state actor, and may be served with process at:

7

Anita Kay Brunsting
203 Bloomingdale Circle
Victoria, Texas 77904

23.     Defendant Anita Brunsting owes fiduciary obligations to Plaintiff Curtis and has breached those fiduciary duties. Each of the above named Defendants were fully aware of the fiduciary duties Anita Brunsting owed to Plaintiff Curtis when they aided and abetted Anita's breach of those fiduciary duties.

24.     Defendant Anita Brunsting is proximately related to Harris County Probate Court, an enterprise which engages in and the activities of which affect interstate and foreign commerce, through her attorneys: Co-Defendants, Bradley Featherston and Stephen Mendel and co-conspirator Defendant Candace Kuntz-Freed.

25.     Defendant Amy Brunsting is an individual person, resident citizen of Comal County, Texas, not a state actor, and may be served with process at:

Amy Ruth Brunsting
2582 Country Ledge
New Braunfels, Texas 78132

26.     Defendant Amy Brunsting owes fiduciary obligations to Plaintiff Curtis. Each of the above named Defendants was fully aware of the fiduciary duties owed to Plaintiff Curtis by Amy Brunsting when they aided and abetted Amy's breach of those fiduciary duties.

27.     Defendant Amy Brunsting is proximately related to Harris County Probate Court, an enterprise which engages in and the activities of which affect interstate and foreign commerce, through her attorney, Defendant Neal Spielman and co-conspirator Defendant Candace Kuntz-Freed.

28.     At all relevant times, each RICO Defendant above-named was a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

**PLAINTIFFS**

29.     Plaintiff Candace Louise Curtis (Curtis) is a citizen resident of California and, as set forth in the following paragraphs of this Complaint, Plaintiff Curtis has standing to bring this action as provided at 18 U.S.C. 1964(c) because she has suffered concrete financial injury to her business and property rights proximately caused by the Defendants' conspiracy to violate 18 U.S.C. §1962(c) as set forth in this Complaint.

30.     At all times material to this complaint Plaintiff Curtis was a citizen resident of California and, as set forth in the following paragraphs of this Complaint, is actively engaged in defending her property interests in Harris County Texas Probate Court No. 4, an enterprise which engages in and the activities of which affect interstate and foreign commerce, and has standing to bring this action as provided at 18 U.S.C. 1964(c) and 42 U.S.C. §§1983, 1985 and 1988(a) having suffered tangible injury to business and property as the actual and proximate result of Defendants' color of law criminal conduct.

31.     Plaintiff Curtis is a member of the body politic of this nation, entitled to and having a property interest in honest government and, because the issues raised herein affect the public interest at large, Plaintiff Curtis also has standing to bring this action on behalf of the public trust as a Private Attorney General, under the Racketeer Influenced Corrupt Organization Statutes, codified at 18 U.S.C. §§1961-1968 as hereinafter more fully appears.

32.     At all times material to this complaint Plaintiff Rik Wayne Munson (Munson) was a citizen resident of California. Plaintiffs Munson and Curtis have been domestic partners for nine years, with overlapping business activities. Munson has also suffered tangible harm to his business and property proximately caused by Defendants' criminal color of law conduct.

33.    Munson is a member of the body politic of this nation, entitled to and having a property interest in honest government and, because the issues raised herein affect the public interest at large, Munson also has standing to bring this action on behalf of the public trust as a Private Attorney General, under the Racketeer Influenced Corrupt Organization Statutes, codified at 18 U.S.C. §§1961-1968 as hereinafter more fully appears.

34.    Plaintiffs can be served at 218 Landana Street, American Canyon, California 94503-1050.

## IV. CLAIM 1
### 18 U.S.C. §1962(d) the Enterprise

**Harris County Probate Court No. 4**

35.    At all times material to this Complaint:

36.    Harris County Probate Court No. 4 constituted an "enterprise" within the meaning of Title 18 United States Code Section 1961(4), (hereinafter, "the enterprise"), a legal entity, which was engaged in, and the activities of which affected interstate and foreign commerce.

37.    Harris County Probate Court was created by statute to administer, apply, and interpret the laws of the State of Texas in a fair and unbiased manner without favoritism, extortion, improper influence, personal self-enrichment, self-dealing, concealment, or conflicts of interest.

38.    As a statutory state probate court the Harris County Probate Court was involved in various aspects of interstate and foreign commerce including, but not limited to, the adjudication of lawsuits involving parties residing or based outside the state of Texas; lawsuits involving properties in other states and in foreign nations; lawsuits involving property under the control of corporations, insurance companies, and other large business entities that conduct national and international business and pay litigation costs, judgments, and settlements, out of

funds derived from doing national and international business affecting interstate and foreign commerce.

39.     As a statutory state probate court the Harris County Probate Court has original jurisdiction in cases involving the settling of estates that include titles to land, control over securities, control of large monetary sums, and other matters in which jurisdiction was not placed in another trial court.

40.     As a statutory state probate court the Harris County Probate Court was involved in various aspects of interstate and foreign commerce including, but not limited to the settling of estates and the distribution of assets that included real property located in foreign states and countries, along with securities traded under the laws of the United States, and assets held by federally insured banks and brokerage companies.

**The Vacek Law Firm a.k.a. Vacek & Freed PLLC**

41.     The Vacek Law Firm, also known as Vacek & Freed PLLC constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), a legal entity associated with Harris County Probate Court, an enterprise engaged in, and the activities of which affected interstate and foreign commerce.

42.     Defendants Albert Vacek Jr. and Candace Kuntz-Freed were employed by or associated with The Vacek Law Firm.

**The Mendel Law Firm, LP**

43.     The Mendel Law Firm constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), a legal entity associated with Harris County Probate Court, an enterprise engaged in, and the activities of which affected interstate and foreign commerce.

44.     Defendants Bradley Featherston and Stephen Mendel were employed by or associated with The Mendel Law Firm.

**Griffin & Matthews**

45.     The Griffin & Matthews law firm constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), a legal entity associated with Harris County Probate Court, an enterprise engaged in, and the activities of which affected interstate and foreign commerce.

46.     Defendant Neal Spielman was employed by or associated with the Griffin & Matthews law firm.

**Crain, Caton & James**

47.     The Crain, Caton & James law firm constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), a legal entity associated with Harris County Probate Court, an enterprise engaged in, and the activities of which affected interstate and foreign commerce.

48.     Defendant Darlene Payne Smith was employed by or associated with the Crain, Caton & James law firm.

**Bayless & Stokes**

49.     The Bayless & Stokes law firm constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4) a legal entity associated with Harris County Probate Court, an enterprise engaged in, and the activities of which affected interstate and foreign commerce.

50.     Defendant Bobbie Bayless was employed by or associated with the Bayless & Stokes law firm.

12

**MacIntyre, McCulluch, Stanfied & Young LLP**

51.     The MacIntyre, McCulluch, Stanfied & Young L.L.P Law firm constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4) a legal entity associated with Harris County Probate Court, an enterprise engaged in, and the activities of which affected interstate and foreign commerce.

52.     Defendant Jill Willard Young was employed by or associated with the MacIntyre, McCulluch, Stanfied & Young LLP law firm.

## V. Enterprise in Fact Association

53.     Plaintiffs incorporate by reference herein all allegations set forth above and below, and by this reference incorporate the same herein and makes each a part hereof as though fully set forth.

54.     At all times material to this complaint:

55.     Defendants Candace Kuntz-Freed, Albert Vacek Jr., Neal Spielman, Bradley Featherston, Stephen A. Mendel, Darlene Payne Smith, Jason Ostrom, Gregory Lester, Jill Willard Young, and Bobbie Bayless, were attorneys and officers of the Court practicing in the Harris County Probate Court, a legal entity, which was engaged in, and the activities of which affected interstate and foreign commerce in the Southern District of Texas and elsewhere within the Jurisdiction of the Court and were thus state actors within the meaning of 42 U.S.C. §1983 and 18 U.S.C. §1951, liable in their individual capacities.

56.     At various times material to this complaint Defendants Candace Kuntz-Freed, Albert Vacek Jr., Neal Spielman, Bradley Featherston, Stephen A. Mendel, Darlene Payne Smith, Jason Ostrom, Gregory Lester, Jill Willard Young, Christine Riddle Butts, Clarinda Comstock, and Bobbie Bayless, were persons associated together in fact for the common purpose

13

of carrying out an ongoing criminal enterprise, as described in this Complaint; namely, through a multi-faceted campaign of lies, fraud, threats and official corruption in furtherance of a conspiracy involving a pattern of racketeering activity, constituting various "enterprise in fact associations" as defined in Title 18 United States Code Section 1961(4), which engaged in, and the activities of which affected interstate and foreign commerce. (See Boyle v. United States, 129 S. Ct. 2237, (2009)).

**Harris County Tomb Raiders a.k.a. The Probate Mafia**

57.     At all times material to this complaint the "Harris County Tomb Raiders" (HCTR) was a secret society of persons, both known and unknown to Plaintiffs, associated together in fact for the common purpose of carrying out an ongoing criminal theft enterprise, as described in this Complaint; namely, through a multi-faceted campaign of lies, fraud, threats, and official corruption in furtherance of a conspiracy involving a pattern of racketeering activity as hereinafter more fully appears.

58.     All Public Actor Defendants are believed to be regular participants in this secret society.

### CLAIM 2
### The Racketeering Conspiracy 18 U.S.C. 1962(C)

59.     From various unknown dates, and continuing thereafter up to and including July 2008, and continuing thereafter up to and including March 9, 2016 and continuing thereafter, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, the Defendants: Candace Kuntz-Freed, Albert Vacek Jr., Bernard Lyle Mathews III, Neal Spielman, Bradley Featherston, Stephen A. Mendel, Darlene Payne Smith, Jason Ostrom, Gregory Lester, Jill Willard Young, Christine Riddle Butts, Clarinda Comstock, Toni Biamonte, Bobbie Bayless, Anita Brunsting, and Amy Brunsting, together with others known and unknown to Plaintiffs,

14

being persons employed by or associated with Harris County Probate Court, an enterprise which engaged in, and the activities of which affected interstate and foreign commerce, did at various times unlawfully, willfully and knowingly combine, conspire and agree with each other to violate 18 U.S.C. Sections 1962(c), by participating, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity involving multiple predicate acts within the meaning of 18 U.S.C. §1961(1) in violation of 18 U.S.C. §1962(c) and (d) to wit:

a.    Conspiracy to deprive the citizens of Texas and other litigants of the honest services of elected officials, 18 U.S.C. §§1341, 1343, & 1346.

   i.    18 U.S.C. §1341 (Property Mail Fraud);

   ii.    18 U.S.C. §§1341 and 1346 (Honest Services Mail Fraud);

   iii.    18 U.S.C. §1343 (Property Wire Fraud);

   iv.    18 U.S.C. §§1343 and 1346 (Honest Services Wire Fraud);

b.    State Law Theft - Texas Penal Codes 31.02 and 31.03 and Hobbs Act Extortion 18 USCS §1951(b)(2) and 2;

c.    Tampering with a federal judicial proceeding by false affidavit, 18 U.S.C. §§402, 1001 and 2 (overlap with 18 U.S.C. §§1503, 1505, 1512, 1621. 1622 and 1623; perjury, subornation of perjury, and false declarations).

d.    Obstruction of Justice and conspiracy to obstruct Justice, 18 U.S.C. §371-- conspiracy to injure or intimidate any citizen on account of his or her exercise or possibility of exercise of Federal right (overlap with 18 U.S.C. §§1503, 1510, 1512, and 1513)

e.      Suborning perjury, 18 U.S.C. §1622, may also be an 18 U.S.C. §1503 omnibus clause offense.

f.      Spoliation: Destruction or concealment of evidence or attempts to do so, 18 U.S.C. §1512(c) conspiracy (18 U.S.C. §1512(k)

g.      Misapplication of fiduciary in excess of $300,000 Texas Penal Codes §§32.45, theft 31.02, 31.03

h.      Illegal Wiretapping in violation of Texas Penal Code §16.02 and 18 U.S.C. §2511 (§§2510-22), as amended by the Electronic Communications Privacy Act (ECPA) (Pub. L. 99-508; 10/21/86) Title III of the Omnibus Crime Control and Safe Streets Act of 1968, (Pub. L. 90-351; 6/19/68), also known as the "Wiretap Act"

i.      Identity Theft 18 U.S.C. §1028(a)(7)

j.      False Instruments used to commit Banking Fraud 18 U.S.C. §1344

k.      False Instruments used to commit Sections 18 U.S.C. §§1341, 1343 & 1346 (Property and Honest Services Mail and Wire Fraud)

l.      False Instruments used to commit Extortion 18 U.S.C. §1951(b)(2) and 2

m.      Aiding and abetting each of the above, (all actors, all counts) 18. U.S.C. §371

n.      Conspiring to promote, conceal and protect predicate activities (a-m above) from discovery, investigation and prosecution by legitimate governmental interests.

60.     The above enumerated "RICO Defendants" did unlawfully, willfully, and knowingly combine, conspire, and agree with each other and with other persons known and

unknown to Plaintiffs to violate 18 U.S.C. §1962(c) as described herein, in violation of 18 U.S.C. §1962(d).

61.     In connection with the acts and omissions alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the internet, the mails, interstate public switched telephone network wire and cellular telephone communications, and the facilities of the national securities exchange.

62.     Upon information and belief, these Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and that the participation and agreement of each of them was necessary to facilitate the commission of this pattern of racketeering activity.

63.     Upon information and belief, each above-named RICO Defendant agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U. S. C. §1962(c) and (d).

64.     Each RICO Defendant knew about and agreed to facilitate the Enterprise's scheme to obtain property from Plaintiffs.

65.     It was part of the conspiracy that the RICO Defendants and their co-conspirators would commit a pattern of racketeering activity in the conduct of the affairs of the Enterprise, including aiding, abetting, promoting and concealing the racketeering activity and predicate acts hereinafter set forth.

66.     It was part of the racketeering conspiracy that through the use of estate plan instruments Defendants, acting in concert both individually and severally, would and did

intercept assets intended for the heirs of estates that pass through Harris County Probate Court, an enterprise, which engaged in, and the activities of which affected interstate and foreign commerce.

67.     It was part of the racketeering conspiracy that through the use of trust instruments Defendants, acting in concert, both individually and severally, would and did intercept assets intended for beneficiaries of trusts that pass through the Harris County Probate Court, an enterprise, which engaged in, and the activities of which affected interstate and foreign commerce.

68.     It was part of the racketeering conspiracy that "trust and estate plan attorneys" would use the "Doctrine of Privity" to shield their part in the pattern of racketeering activity from possible culpability or any liability to the intended victims of the inheritance expectancy interception scheme.

69.     It was part of the racketeering conspiracy that attorneys participating in the scheme and artifice to deprive would use the Texas Attorney Immunity Doctrine to shield their part in the pattern of racketeering activity from possible culpability or any liability to the intended victims of the inheritance expectancy interception scheme.

70.     It was part of the racketeering conspiracy that judges participating in the scheme and artifice to deprive would use the doctrines of Judicial, Qualified and Absolute Immunity to shield their participation in the pattern of racketeering activity from possible culpability or any liability to the intended victims of the inheritance expectancy interception scheme.

71.     It was part of the racketeering conspiracy that through the use of guardianship actions Defendants, acting in concert, both individually and severally, would and did use the

Harris County Probate Court, an enterprise, which engaged in, and the activities of which affected interstate and foreign commerce, to judicially kidnap and rob the elderly, our most vulnerable citizens, of their freedom, dignity, fundamental human and civil rights and property accumulated throughout a lifetime, often also robbing heirs and beneficiaries of familial relations and inheritance expectancies.

72.     It was part of the racketeering conspiracy that Defendants would commit violations of constitutionally protected rights under the disguise of a statutory scheme.

73.     It was understood that each conspirator would participate in the commission of at least two acts of racketeering activity in the conduct of the affairs of the enterprise, as part of the racketeering conspiracy.

74.     It was also a part of the racketeering conspiracy that Defendants, acting in concert, both individually and severally, would and did promote, conceal, and otherwise protect the purposes of the racketeering activity from possible criminal investigation and prosecution as hereinafter more fully appears.

## VI. Purposes of the Racketeering Activity

75.     Plaintiffs incorporate by reference herein all allegations set forth above and below, and by this reference incorporate the same herein and makes each a part hereof as though fully set forth and alleges that:

76.     From an unknown date and continuing thereafter up to and including the specific events complained of herein, these Defendants, in concert with persons both known and unknown to Plaintiffs, individually and severally, conspired to participate and did participate in an organized criminal consortium for the purpose of actively redirecting trust, estate and other

third party property into the state probate courts, where Defendants operate to convert third party property to their own unjust self-enrichment.

77.   It was a purpose of the racketeering activity that Defendants, acting in concert, both individually and severally, would and did loot assets held by private trusts and estates against the will of the victims, family members, and friends, through the use of guardianship protection statutes and other schemes.

78.   It was a purpose for the racketeering activity that trust and estate plan attorneys acting in concert with other attorneys and with persons both known and unknown to Plaintiffs, would and did exploit the elders of our society for the purpose of syphoning off the assets of our eldest and most vulnerable citizens through the aforementioned schemes and artifices, as exemplified herein and elsewhere in the public domain and as hereinafter more fully appears.

79.   The purpose for the racketeering activity was to facilitate the looting of wealth, also known as **Involuntary Redistribution of Assets** (IRA) from its rightful owners, for the unjust enrichment of attorneys and other legal professionals operating out of state probate courts, including but not limited to Harris County Probate Court No. 4 and these co-conspirator Defendants.

80.   The specific quid pro quo method of profit sharing is unknown to Plaintiffs but appears to include political aspiration, judicial favors, campaign contributions, bribes and kickbacks, cronyism and "Good Ole Boy" networking.

81.   The conclusion that there is a reciprocal stream-of-benefits necessarily flows from the facts of the in-concert illegal activities of the co-conspirators, as exemplified herein.

82.     Based upon personal knowledge and upon information and belief Plaintiffs allege that:

83.     The above enumerated "RICO Defendants" unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. §1962(c) as described herein, in violation of 18 U.S.C. § 1962(d).

84.     Upon information and belief, Each RICO Defendant knew about and agreed to facilitate the Enterprise's scheme to obtain property from Plaintiff and others, and to participate, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. §1962(c).

85.     The RICO Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and that the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity. This conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. §1962(d).

86.     Each of the above named RICO Defendants conducted or participated, directly or indirectly, in the conduct, management, or operation of the Enterprise's affairs through a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961 (5) and in violation of 18 U.S.C. § 1962(c) & (d), to wit:

**Commercial Purpose**

87.     The constituent members comprising each ENTERPRISE are engaged in a concerted campaign to extort, defraud, trick, deceive and corruptly persuade their client victims (probate court litigants) to exercise proprietary control over, and extract maximum value from,

the target trust and/or estate, in much the same way a bankruptcy trustee operates to control a bankruptcy estate.

88.     Further, in unfairly protecting their commercial purposes, each ENTERPRISE operative works with the others to harass, threaten, abuse, denigrate, impugn, threaten, and intimidate litigants, competitors, critics, reformers, and others.

89.     The various ENTERPRISES operate as a "cabal", a semi-private, sometimes secret, informal affiliation of entities with public presence and identity that is wholly or partially inaccurate and misleading as to the true goals, affiliations, and processes of the cabal.

90.     The ENTERPRISES achieve their respective purposes by collusion among operators and affiliates, who in their COMMERCIAL SPEECH represent to their clients that the relationships among the members are in compliance with legal and ethical PROFESSIONAL DUTIES when they, in fact, are not.

91.     Funded by fraudulent exploitation of the parties, ENTERPRISE operators and affiliates engage in bribery, exchanging value, emoluments, patronage, nepotism, and/or kickback schemes within their networks to assure system-wide "cash flow" and continued viability and vitality of the ENTERPRISES.

92.     ENTERPRISES refuse such cooperation with non-affiliates, thereby baring potential competitors. These bars include fraudulently manipulated referrals, representations, certifications, nepotism, illegal antitrust tactics, and manufactured pitfalls to support the pervasive "who you know" method the cabal uses in defiance of the rule of law.

93.     Probate Mafia operators, like the attorney Defendants here, regularly breach one or more of their PROFESSIONAL DUTIES of loyalty, zealous advocacy, fiduciary

responsibility, and professional competence through one or more "false flag" frauds to induce, deprive, or deceive clients and other litigants not schooled in the law. These "False Flag" maneuvers involve one or more COMMERCIAL SPEECH misrepresentations to unsophisticated layperson parties, thereby depriving them of the benefits of legitimate legal professional services and perpetrating fraud upon the Court.

94.     Probate Mafia operatives have developed numerous pernicious tools to maximize their benefits from the wealth redistribution. A prominent artifice is the "independent" appointee that appears in virtually every case.

95.     Probate Mafia schemes and artifices also include such practices as Poser Advocacy. "Poser Advocacy" is the practice and sale of what appears to be the practice of law to inexperienced parties. Attorneys engaging in poser advocacy act to appeal to their client's emotions, greed, or other untoward ends to generate fees, with no beneficial legal work performed.

96.     Poser Advocates write angry letters, exchange worthless formwork discovery, and repeatedly file baseless amendments and motions with no hope of productive benefit, for the sole purpose of generating a bill.

97.     In the more sophisticated commercial legal marketplace poser advocacy is not tolerated, as clients insist upon, and attorneys abide by, legitimate practice and ethical standards.

98.     Because of the unique nature of the clients and market, Probate Mafia members like these are generally able to pass off Poser Advocacy as if it was real legal work. It is not.

99.     In the Probate Mafia enterprise scheme of things the familial wealth hijacker represents an exploitation opportunity and, as such, receives special attention.

## VII. Means and Methods of the Racketeering Conspiracy

100.    Plaintiffs incorporate by reference herein all allegations set forth above and below, and by this reference incorporate the same herein and makes each a part hereof as though fully set forth and alleges that:

101.    It was a part of the racketeering conspiracy that a modern day criminal cabal through a network of probate lawyers, judges, court appointed administrators, guardians, social workers, doctors and "care facilities" would use county courtrooms relying upon the judicially created and judicially enlarged doctrine of absolute judicial immunity, the Texas Attorney Immunity Doctrine, the Doctrine of Privity and the Probate Exception to federal diversity jurisdiction as a license to steal money and other liquid assets and to liquidate their victims' real and other property for their own unjust self-enrichment, all without their victim's consent and over their objections.

102.    This looting has been given the appearance of legitimacy under the health and welfare label of "guardianship protection" stealing not only assets, but also the due process rights, liberty, and human dignity of their victims.

103.    It was a part of the conspiracy that Defendants would and did use the Harris County Probate Courts and the offices of Judge to deprive the citizens of Texas and other litigants, of their right to the honest services of elected officials, while promoting, concealing, and otherwise protecting the purposes of the racketeering activity from possible criminal investigation and prosecution.

104.    It was part of the racketeering conspiracy that Defendants would and did use the various probate instruments and legal artifice and that acting in concert, both individually and severally, Defendants would and did siphon off assets rightfully belonging to others.

24

105.    It was part of the racketeering conspiracy that the various probate instruments would be and were designed to facilitate falsifications and alterations and that the enterprise participants would be selectively blind to the obvious inconsistencies, avoiding any questions of forgery or fraud appearing in the public record.

106.    It was part of the racketeering conspiracy that Defendants acting individually and in concert would and did use the Harris County Probate Courts and the offices of Judge to trap litigant victims in an endless cycle of delay and expense until the victims were forced to settle for the least injustice in order to walk away with even a meager portion of what rightfully belongs to them from the onset.

107.    It was part of the racketeering conspiracy that Defendants acting individually and in concert would obtain and did attempt to obtain improper dominion over the property of Plaintiff Curtis and others, attempting to obtain consent induced by the wrongful use of actual and threatened force, violence and fear of economic harm to Plaintiff Curtis' rights in property, using the 8/25/2010 extortion instrument, hereinafter more fully described.

108.    It was part of the racketeering conspiracy that unscrupulous attorneys who market trust and estate plan instruments promising to provide asset protection, minimize taxes, avoid probate, and avoid guardianship, acting individually and in concert, would engage in the redirection of family trusts into the hands of the "Probate Cabal" by undermining those products when the aging client weakens and by generating conflicts amongst the beneficiaries, thus delivering their client's prosperity to the exact evil that victims were guaranteed protection from.

109.    It was part of the racketeering conspiracy that Defendants, for their own unjust self-enrichment, acting individually and in concert, would use the Harris County Probate Court and the appearance of legitimacy that attaches to public offices and officers to manipulate and

game the legal process in ways that deprived citizens who came before the court of rights guaranteed and protected by our state and federal constitutions.

110. In the matter from which these RICO claims arise, "Curtis v Brunsting", both the estate instruments and the inter vivos family trust agreements were the vehicles used by Defendant enterprise acolytes to foster and maintain the estate and trust looting probate litigation that Decedents were promised the trust would, but did not, provide protection from.

111. As an actual consequence and proximate result of the actions of the very people who sold the Brunstings "Peace of Mind", promising that their products and services would provide protection from probate, the Brunsting trust and estate are caught in probate stasis.

112. Defendants, in concert, have maintained the litigation and are holding the Brunsting trusts hostage to a settlement agreement that will include the attorneys' fees getting paid from the trust corpus, in direct opposition to the Grantors express intentions.

113. In the case in point, Plaintiff/Beneficiary Curtis was at the precipice of legal victory and the enterprise stepped in to redirect the outcome away from the public record to a mediation/ADR bait-and-switch, in which the outcome is predetermined by the personal interests of enterprise acolytes and not by law.

114. In pursuit of that plan Plaintiff Curtis is being coerced into a staged mediation, with Defendants who have demonstrated no intention of honoring any legal or moral obligations.

115. It is also part of the conspiracy that the true purpose of mediation is to convert the controversy from breach of the trust agreement and the drafting of false instruments, into discussions regarding breach of a mediated settlement agreement which, like the family trust agreement and remand agreement, is certain to also not be honored by the acolytes.

116.    In this way enterprise acolytes maximize the take while preventing the dirt from floating to the surface of the public record, and promoting, concealing, and otherwise protecting the purposes of the racketeering activity from possible criminal investigation and prosecution.

117.    In the case in point, the probate Court judges and the attorneys are holding settlement of the Brunsting family of trusts hostage to the payment of attorneys' fees.

118.    The controversy is over on the pleadings and Plaintiff Curtis prevails as a matter of law, but the lawyers and judges will not allow any resolution that does not have the lawyers walking away with the lion's share of the family inheritance, nor any solution that allows the facts to be compiled on the public record.

119.    Defendant Candace Freed is neatly sequestered in the District Court so that she will never be confronted by a legitimate plaintiff and there is no executor occupying the office. There is no docket control order or trial date, and summary judgment motions were swept off the table on the very last day in which summary judgment motions were to be heard and the summary judgment motion hearing became a hearing on a motion for protective order regarding dissemination of illegally obtained wiretap recordings, in furtherance of a pattern of racketeering activity as hereinafter more fully appears.

### VIII. Predicate Acts and Actors

120.    Plaintiffs incorporate by reference herein all allegations set forth above and below, and by this reference incorporate the same herein and makes each a part hereof as though fully set forth:

### CLAIM 3 (Honest Services) 18 U.S.C. §1346 and 2

121.    From an unknown date, known to be on or before July 21, 2015 and continuing thereafter up to and including September 10, 2015 and continuing thereafter up to and including March 9, 2016  and continuing thereafter in the Southern District of Texas and elsewhere within the jurisdiction of the Court, for the purpose of executing or attempting to execute a scheme and artifice to defraud and deprive, Defendants Neal Spielman, Bradley Featherston, Stephen Mendel, Greg Lester, Christine Butts, Clarinda Comstock, Jill Young, and Toni Biamonte, being "persons" employed by or associated with Harris County Texas Probate Court, an enterprise which engages in and the activities of which affect interstate and foreign commerce, together with persons both known and unknown to Plaintiffs, individually and severally, did unlawfully, willfully and knowingly conspire to alter the course of justice under color of official right, for the purpose of executing or attempting to execute the scheme and artifice to defraud and deprive, in that Defendants conspired to redirect civil litigation away from the public record to a staged mediation planned for the purpose of obtaining Plaintiff Curtis' property by consent, using disinheritance threats, that in order to get any of her property at all she will have to agree to "settle", for the purpose of adding delay and increasing expense, for bringing further extortion pressure to bear, to intimidate, for the purpose of holding the money cow trust hostage for attorney fee ransoms, for the purpose of avoiding summary judgment hearings thus preventing evidence of the racketeering conspiracy from reaching the public record, for the purpose of diverting the discussion away from breach of the ruptured and looted trust agreement to argument over breach of a mediated settlement agreement, all in furtherance of a pattern of racketeering activity affecting interstate and foreign commerce in that:[2]

---

[2] Also violations of 18 U.S.C. §242 and 42 U.S.C. §§1983, 1985 and right of claims under §1988 also including in concert aiding and abetting public and private breach of fiduciary and misapplication of fiduciary.

**CLAIM 4 - (Honest Services) 18 U.S.C. §1346 and 2**

122.     On or about September 10, 2015, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendants Neal Spielman, Bradley Featherston, Greg Lester, Christine Riddle Butts, Clarinda Comstock, Jill Willard Young, and Toni Biamonte, did unlawfully, willfully and knowingly conspire to alter the course of justice, under color of official right, for the purpose of executing or attempting to execute a scheme and artifice to defraud and deprive, in furtherance of a pattern of racketeering activity affecting interstate and foreign commerce in violation of 18 U.S.C. §1346:

**CLAIM 5 - (Honest Services) 18 U.S.C. §1346 and 2;**
**CLAIM 6 - (Wire Fraud) 18 U.S.C. §1343 and 2;**
**CLAIM 7 - (Fraud) 18 U.S.C. §1001 and 2;**
**CLAIM 8 (Theft/ Hobbs Act Extortion) Texas Penal Codes 31.02 & 31.03 and 18 U.S.C.**
**§1951(b)(2) and 2;**
**CLAIM 9 (Conspiracy to Obstruct Justice) 18 USAC §371;[3]**

123.     On or about January 14, 2016, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendants Gregory Lester and Jill Willard Young did unlawfully, willfully and knowingly conspire to alter the course of justice for the purpose of executing or attempting to execute a scheme and artifice to defraud and deprive by electronically filing a fictitious report into the Harris County Probate Court No. 4, an enterprise which engages in and the activities of which affect interstate and foreign commerce, as part of the conspiracy entered into on or before September 10, 2015 and in furtherance of a pattern of racketeering activity affecting interstate and foreign commerce in violation of 18 U.S.C. §§371, 1001, 1346, 1343, 1951(b)(2) and 2 – Texas Penal Codes 31.02 and 31.03.

---

[3] Also violations of 18 U.S.C. §242 and 42 U.S.C. §§1983, 1985 and right of claims under §1988 also including in concert aiding and abetting public and private breach of fiduciary and misapplication of fiduciary.

**CLAIM 10 - (Honest Services) 18 U.S.C. §1346 and 2;**
**CLAIM 11 - (Fraud) 18 U.S.C. §1001 and 2;**
**CLAIM 12 (Theft) Texas Penal Codes 31.02 & 31.03/ Hobbs Act Extortion 18 U.S.C.**
**§1951(b)(2) and 2;**
**CLAIM 13 (Conspiracy) 18 USAC §371 and 2;**

124.    On or about March 9, 2016, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendants Neal Spielman, Stephen A. Mendel, Gregory Lester, Bobbie Bayless, and Clarinda Comstock did unlawfully conspire to alter the course of justice, under color of official right, for the purpose of executing or attempting to execute the scheme and artifice to defraud and deprive, entered into on or before July 2015, in furtherance of a pattern of racketeering activity affecting interstate and foreign commerce involving violations of 18 U.S.C. §§371, 1001, 1346, 1343, 1951(b)(2)  and 2, and 42 U.S.C. §§242, 1983 and 1985 and Texas Penal Codes §§31.02 and 31.03. 32.21.

125.    As part of the racketeering conspiracy Defendants, acting in concert, both individually and severally, acted together to promote, conceal, and otherwise protect the purposes of the racketeering activity from possible criminal investigation and prosecution.

**CLAIM 14 (Illegal Wiretap) Texas Penal Code 16.02 and 18 U.S.C. §2511 and 2[4]**

126.    From an unknown date, including but not limited to March and April of 2011, and continuing thereafter in the Southern District of Texas and elsewhere within the jurisdiction of the Court, for the purpose of executing or attempting to execute the scheme and artifice to defraud and deprive, Defendants Anita Brunsting and Amy Brunsting acting individually and in concert with persons both known and unknown to Plaintiff Curtis, conspired to unlawfully,

---

[4] Texas Penal Code 16.02 and 18 U.S.C. §2511 (§§2510-22) Texas Civil Wire Tap Act found at Tex. Civ. Prac. & Rem. Code, Title 123 as amended by the Electronic Communications Privacy Act (ECPA)(Pub. L. 99-508; 10/21/86) Title III of the Omnibus Crime Control and Safe Streets Act of 1968, (Pub. L. 90-351; 6/19/68), also known as the "Wiretap Act".

willfully and knowingly intercept and did unlawfully intercept, record, possess, conceal, manipulate and selectively disseminate illegal wiretap recordings of private telephone conversations intercepted by use of an electronic recording device attached to the telephone line of Nelva Brunsting, in furtherance of a pattern of racketeering activity affecting interstate and foreign commerce in that:

## CLAIM 15 - Dissemination of illegal wiretap Recordings by mail 18 U.S.C. §§1341 and 2

127.    On or about July 1, 2015, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, for the purpose of executing or attempting to execute the scheme and artifice to defraud and deprive, Defendants Anita Brunsting and Bradley Featherston, aided and abetted by persons known and unknown to Plaintiffs and aiding and abetting persons known and unknown to Plaintiffs, did unlawfully, willfully and knowingly cause illegal wiretap recordings of private telephone conversations between Carl Brunsting and his wife Drina Brunsting, to be delivered by certified mail to Plaintiff Curtis and the third party attorneys for parties in multiple pending lawsuits, in violation of 18 U.S.C. §2511(1)(c) and Texas Penal Code 16.02. The illegal wiretap recordings selectively disseminated on CD-ROM, are believed to have been made on or about March and April 2011. The CD contained items which were Bates numbered 5814 to 5840. Included among those items were the following four audio recordings:[5]

## CLAIM 16 - Illegal Wiretap (Tampering and Manipulation)

(1) a 43 second phone conversation between Carl and his mother which, according to the file properties, was both created and modified on February 27, 2015 (Brunsting 5836.wav);

---

[5] Excerpted from Carl Brunstings Motion for Protective Order filed July 17, 2015.

31

## CLAIM 17 - Illegal Wiretap (Tampering and Manipulation)

(2) a phone conversation lasting 6 minutes and 44 seconds between Carl and Drina which, according to the file properties, was both created and modified on February 27, 2015 (Brunsting 5837.wav);

## CLAIM 18 - Illegal Wiretap (Manipulation)

(3) a telephone conversation lasting 19 minutes and 18 seconds between Carl and Drina which, according to the file properties, was both created and modified on April 22, 2011 (Brunsting 5838.wav); and

## CLAIM 19 - illegal wiretap (Manipulation)

(4) a telephone conversation lasting 8 minutes and 53 seconds between Carl and Drina which, according to the file properties, was both created and modified on March 21, 2011 (Brunsting 5839.wav).

## CLAIMS 20 and 21 Illegal Wiretap, in Concert Aiding and Abetting: Spoliation, Destruction or Concealing Evidence 18 U.S.C/ §§1512(c) conspiracy 1512(k) & 1519 and 2

128.    On July 21, 2015 in the southern district of Texas and elsewhere within the jurisdiction of the Court, Counsel for Anita Brunsting - Bradley Featherston, Counsel for Amy Brunsting - Neal Spielman, and Counsel for Carole Anne Brunsting - Darlene Payne Smith, filed in-concert objections to the application for protective orders filed by Carl Brunsting, and while objecting to the protective order and arguing the recordings contained relevant and admissible evidence, Defendants Bradley Featherston, Neal Spielman, and Darlene Payne Smith simultaneously objected to qualifying the recordings in any way and just like the infamous

8/25/2010 extortion instrument, when confronted with demands for a show of proof they are unwilling to bring forth any evidence, and none of them claim to know anything individually.

129.    Implicit in the assertion the recordings were relevant and the content admissible, Defendants claimed to possess personal knowledge that: "(1) the recording device was capable of recording the events offered in evidence; (2) the operator was competent to operate the device; (3) the recording is authentic and correct; (4) changes, additions, or deletions have not been made in the recording; (5) the recording has been preserved in a manner that is shown to the court; (6) the speakers on the tape are identified; and (7) the conversation elicited was made voluntarily and in good faith, without any kind of inducement."

130.    Defendants have obtained, possessed, manipulated and disseminated illegal wiretap recordings and are now concealing:

      a.      The device used

      b.      The original wiretap media

      c.      Other wiretap recordings

      d.      The chain of custody

## CLAIM 22 - Conspiracy to Obstruct Justice

131.    On or about July 22, 2015 in the southern district of Texas and elsewhere within the jurisdiction of the Court, Defendants Bobbie Bayless, Clarinda Comstock, and Neal Spielman, aided and abetted by persons known and unknown to Plaintiffs and aiding and abetting persons known and unknown to Plaintiffs, did unlawfully, willfully and knowingly combine, conspire and agree with each other to obstruct and conceal evidence and engage in predicate acts including but not limited to 18 U.S.C. §§1512(c) conspiracy 1512(k), 1519 and 18

33

U.S.C. §§1951(b)(2) and 2, Extortion and Texas Penal Codes §§31.02, 31.03 and 32.21 (theft/extortion) by removing Summary Judgment Motions from Calendar and creating stasis, as part of a conspiracy to deprive Plaintiff Curtis of an impartial forum (18 USC §§242) , access to the Courts (42 U.S.C. §1983) substantive due process, (42 U.S.C. §1985) equal protection, and (Texas Penal Code §§31.02 and 31.03) property rights.[6]

**CLAIM 23 – Conspiracy Re: State Law Theft/ Extortion - in Concert Aiding and Abetting**

132.     From an unknown date and continuing thereafter up to and including July 21, 2015 and continuing thereafter up to and including September 10, 2015 and March 9, 2016  and continuing thereafter in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendants Neal Spielman, Bradley Featherston, Stephen A. Mendel, Gregory Lester, Christine Riddle Butts, Clarinda Comstock, Jill Willard Young, and Toni Biamonte, together with persons both known and unknown to Plaintiffs, individually and severally, did unlawfully, willfully and knowingly conspire to obstruct, delay and affect, and did attempt to obstruct, delay and affect, commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by extortion under color of official right, as that term is defined in Title 18, United States Code, Section 1951(b)(2), in that Defendants conspired to obtain and did attempt to obtain the property of Plaintiff Candace Louise Curtis, endeavoring to obtain consent induced by the wrongful use of actual and threatened force, violence and fear, in that the Defendants did conspire to use a fictional report, a staged mediation, an extortionist thug mediator, acts obstructing and delaying justice, and the forged extortion instrument, to make threats with the intention of instilling fear of economic

---

[6] 18 U.S.C. §2: In concert aiding and abetting: Public Services Fraud, Breach of Fiduciary, Misapplication of Fiduciary, Concealing evidence of forgery (Texas Penal Code §32.21) and racketeering.

harm in Plaintiff Curtis in furtherance of a pattern of racketeering activity affecting interstate and foreign commerce.

## CLAIM 24 - State Law Theft/ Hobbs Act Extortion 18 U.S.C. 1951(b)(2) and 2

133. On or about August 25, 2010, and continuing thereafter in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendants Candace Freed and Anita Brunsting did unlawfully, knowingly and intentionally further a conspiracy to obstruct, delay and affect, and did attempt to obstruct, delay and affect commerce, and the movement of articles and commodities in such commerce, by extortion under color of official right, as that term is defined in Texas Penal Codes 31.02 and 31.03 and Title 18, United States Code, Section 1951, in that Defendant Candace Freed, with persons both known and unknown to Plaintiffs, did conspire to obtain improper dominion over the assets of the Brunsting family of trusts and the expected property of Plaintiff Curtis, by collaborating to obtain consent induced by the wrongful use of threatened force, violence and fear, in that Defendant Candace Freed did implement the Vacek design in drafting the heinous 8/25/2010 "Qualified Beneficiary Designation and Testamentary Power of Appointment under Living Trust Agreement" (hereinafter the "8/25/2010 QBD" or "Extortion Instrument"). Such instrument was, in fact, used to make threats and to instill fear of economic harm in the victims of the inheritance theft conspiracy, for which the extortion instrument was created, along with other intended illicit purposes as hereinafter more fully appears.

## CLAIM 25 - State Law Theft/Hobbs Act Extortion 18 U.S.C. §1951(b)(2) and 2
## CLAIM 26 – Wire Fraud 18 U.S.C. §§1343

134. On or about October 23, 2010, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendant Anita Brunsting knowingly and intentionally

furthered the extortion conspiracy by emailing the extortion instrument (8/25/2010 QBD) to Plaintiff Curtis, along with trust instruments, in violation of 18 U.S.C. §§1343 and 1951.

## CLAIM 27 - State Law Theft/Hobbs Act Extortion 18 U.S.C. §1951(b)(2) and 2
## CLAIM 28 – Mail Fraud 18 U.S.C. §§1341

135.    On or about June 4, 2015, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendant Anita Brunsting knowingly and intentionally furthered the extortion conspiracy in her response to Plaintiff Curtis' first interrogatories.  At item number 15 page 6, Anita uses the heinous extortion instrument to threaten Carl and Candace, both of whom are victims of Anita's felony thefts in violation of 18 U.S.C. §§1951.

136.    Defendants Anita Brunsting and Bradley Featherston placed the June 4, 2015 response to interrogatories containing extortion threats for delivery with the U.S. Postal Service in violation of 18 U.S.C. §1341.

## CLAIM 29 - State Law Theft/Hobbs Act Extortion 18 U.S.C. §1951(b)(2) and 2
## CLAIM 30 – Wire Fraud 18 U.S.C. §§1341

137.    On or about February 18, 2015, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendant Amy Brunsting knowingly and intentionally furthered the extortion conspiracy in her response to Plaintiff Curtis' second application for distribution. On page 7, Amy Brunsting and her Counsel Neal Spielman advance threats using the heinous extortion instrument in violation of 18 U.S.C. §1951(b)(2)  and 2, knowing full well that it is not a legitimate instrument by any measure.

138.    Defendants Amy Brunsting and Neal Spielman placed the June 4, 2015 response to interrogatories containing extortion threats for delivery with the U.S. Postal Service in violation of 18 U.S.C. §1341, 1951(b)(2) and 2.

**CLAIM 31 - State Law Theft/Hobbs Act Extortion 18 U.S.C. §1951(b)(2) and 2**
**CLAIM 32 – Mail Fraud 18 U.S.C. §§1341**

139.    On or about June 25, 2015, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendant Amy Brunsting and her Counsel, Defendant Neal Spielman unlawfully, willfully and knowingly advanced threats using the heinous extortion instrument in Amy's response to Plaintiff Curtis' Request for Production, delivered USPS in violation of 18 USC §§1341, 1951.

**CLAIM 33 - State Law Theft/Hobbs Act Extortion 18 U.S.C. §1951(b)(2) and 2**
**CLAIM 34 – Mail Fraud 18 U.S.C. §§1341**

140.    On or about December 5, 2014, Defendant Anita Brunsting through her Counsel, Defendant Bradley Featherston, advanced and furthered the extortion conspiracy when Featherston filed Anita's objection to Carl Brunsting and Plaintiff Curtis' applications for distribution. In section F on page 6 Anita uses the extortion instrument to allege that both theft victims Carl and Candace had violated the in terrorem clause in the extortion instrument by defending their beneficial interests, in violation of 18 U.S.C. §1951 and 1341.

> *"4. If the Court finds the in terrorem clause is enforceable, then Candace and Carl have no right to any distribution from the trust".*

**CLAIM 35 - State Law Theft/Hobbs Act Extortion 18 U.S.C. §1951(b)(2) and 2**
**CLAIM 36 - Mail Fraud 18 U.S.C. §1341**

141.    On or about June 4, 2015 in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendant Anita Brunsting, in response to Plaintiff Curtis' first interrogatories, at item number 15 page 6, again used the heinous extortion instrument to threaten Carl and Candace, both of whom are victims of Anita's first degree felony thefts, delivered USPS in violation of 18 USC §§1341 and 1951.

**CLAIM 37 – Tampering with Federal Judicial Proceeding by False Affidavit 18 U.S.C. §371, 1621 and 2**

142.    On March 6, 2012, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendants <u>Amy Brunsting</u> and <u>Bernard Lyle Mathews III</u>, aided and abetted by others unknown to Plaintiff and aiding and abetting others unknown to Plaintiff, did corruptly, unlawfully, knowingly, and willfully obstruct, influence, and impede an official proceeding, and did attempt to do so, that proceeding being Candace Louise Curtis v. Anita Brunsting et al., No. 4:12-CV-00592 the United States District Court for the Southern District of Texas, Houston Division, by filing a false affidavit In violation of Title 18, United States Code, Sections 1001, 1512(c)(2), 1623, and 18 U.S.C. §402 and F.R.C.P. Rule 11(b).

**CLAIM 38 - Spoliation, Destruction or Concealing Evidence 18 U.S.C. §§1512(c) Conspiracy 1512(k) and 1519 and 2**

143.    On or about September 10, 2015 and continuing thereafter, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendant <u>Toni Biamonte</u> as an official court reporter did unlawfully, knowingly and willfully spoliate, destroy or otherwise conceal material evidence of a racketeering conspiracy in violation of 18 U.S.C. §§1512(c) conspiracy 1512(k) and 1519, aiding and abetting the racketeering conspiracy and is, thus, a principal in acts in furtherance of the aforementioned and described conspiracy to violate 18 U.S.C. §1962(c) in violation of 18 U.S.C. §1962(d).

**CLAIM 39 - Forgery on Internal Revenue forms 18 U.S.C. §§287, 371, and 1001 and 2**

144.    On or about June 7, 2011, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendant <u>Anita Brunsting</u>, for the purpose of executing or attempting to execute a scheme and artifice to defraud and deprive did unlawfully, knowingly

and willfully apply the Social Security Number, the record identifier used to ensure proper payment of benefits in both the Title II and Title XVI programs, and did forge the signature of Plaintiff Curtis on stock transfer forms, to facilitate the improper transfer of securities by Computershare, an investment services corporation.

## CLAIM 40(a-d) - Forgery & False Instruments, Aiding and Abetting Theft, Banking, Wire, Mail and Securities Fraud (Texas Penal Codes 31.02 & 31.03 & 18 U.S.C. §§1001 and 2)

Conspiracy to commit securities, mail, wire and banking fraud,

      a.    False Instruments used to trade in Securities 18 USC §§1348/1349 – Securities Fraud, 15 U.S.C. §78aa and 15 U.S.C. §§78j(b) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) and the right of claims implied therefrom. (fraudulent trading in securities is civilly and criminally actionable but are not predicate acts)

      b.    False Instruments used to commit Banking Fraud 18 U.S.C. §1344

      c.    False Instruments used to commit Sections 18 U.S.C. §§1341, 1343 and 1346 (Property Mail and Wire Fraud)

      d.    False Instruments used to commit 18 U.S.C. §1951 Hobbs Act Extortion

    145.    From an unknown date, known to be before July 1, 2008, and continuing thereafter up to and including August 25, 2010  and continuing thereafter up to and including December 21, 2010 and continuing thereafter in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendant <u>Candace Kuntz-Freed</u> drafted false instruments, undermining the trust instrument products and estate plan services marketed by Vacek & Freed

PLLC, to facilitate the theft of trust assets by Anita Brunsting, as part of a racketeering conspiracy in that:

146.    Anita Brunsting used the illicit July 1, 2008 Appointment of Successor Trustees drafted by Candace Freed to commit acts complained of herein.

147.    Anita Brunsting used the illicit August 25, 2010 appointment of successor co-trustees to commit acts complained of herein.

148.    Anita Brunsting used the illicit December 21, 2010 appointment of successor trustee to commit acts complained of herein.

149.    Freed drafted the illicit 8/25/2010 "Qualified Beneficiary Designation and Testamentary Power of Appointment under Living Trust Agreement" (The Extortion Instrument) in concert with Anita Brunsting, and not at the behest of her client Nelva Brunsting.

150.    Anita Brunsting used the illicit 8/25/2010 "Qualified Beneficiary Designation and Testamentary Power of Appointment under Living Trust Agreement" (The Extortion Instrument), in concert with others known and unknown to Plaintiff, to commit the acts of theft and extortion complained of herein.

151.    Plaintiff Curtis was damaged in her property rights by Anita Brunsting's improper use of the illicit instruments drafted by Candace Freed.

**CLAIM 41 - Misapplication of fiduciary in excess of $300,000.00 Texas Penal Code Thefts §§31.02, 31.03, 32.45 (against elderly person Tex. Pen. Cd. 32.45(d))**
**CLAIMS 42(a–q) Wire, Mail, and Banking Fraud 18 USC §§1341, 1343, 1344 and 2**

152.    From an unknown date, known to be on or before December 21, 2010 and continuing thereafter, in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendant Anita Brunsting, aided and abetted by persons known and unknown to

Plaintiff and aiding and abetting persons known and unknown to Plaintiff, did unlawfully, willfully and knowingly, misapply fiduciary assets in excess of $300,000 (Texas Penal Code theft §§32.45, 31.02, 31.03) in that:

153.   Defendant Anita Brunsting paid her personal credit card debts and made other improper transfers from a trust bank account, in violation of provisions of the family trust, the common law and the Texas trust code. These comingling and misapplication transactions were perfected by electronic funds transfer and the use of the mails.[7]

### IX. Non-Predicate Act Civil Claims for Damages

**CLAIMS 43 (a-j) Section 27 of the Exchange Act (15 U.S.C. §78aa) and Section 10(b) of the Exchange Act (15 U.S.C. §§78j(b) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5)**

154.   From an unknown date, believed to be on or before December 21, 2010, and continuing thereafter in the Southern District of Texas and elsewhere within the jurisdiction of the Court, Defendant Anita Brunsting did unlawfully, willfully and knowingly misapply fiduciary assets in excess of $300,000 (Texas Penal Code theft §§32.45, 31.02, 31.03). Many of the transactions involved Electronic Funds Transfers and others involved the use of the mails. Many transactions also involved banking and/or securities fraud 18 USC §§1341, 1343, 1344 and 2 and Section 27 of the Exchange Act  (15 U.S.C. §78aa) and Section 10(b) of the Exchange Act (15 U.S.C. §§78j(b) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) in that:

155.   May 11, 2011, using the illicit instruments drafted by Defendant Candace Freed, Defendant Anita Brunsting, acting trustee de son tort, unlawfully, knowingly and willfully

---

[7] Please see Appendix A attached hereto for a chart of events, dates, transactions and mediums employed. (Securities fraud is not considered a Predicate Act and the securities theft transactions are herein pled in the alternative as misapplications of fiduciary involving wire, mail and banking fraud)

misappropriated and misapplied fiduciary assets by improperly transferring 1120 Shares of Exxon and Chevron securities valued at $90,854.00 in violation of 18 U.S.C. §1343 (Wire Fraud) and Section 27 of the Exchange Act  (15 U.S.C. §78aa) and Section 10(b) of the Exchange Act (15 U.S.C. §§78j(b) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5)

156.    June 15, 2011 using the illicit instruments drafted by Defendant Candace Freed, Defendant Anita Brunsting, acting trustee de son tort, unlawfully, knowingly and willfully misappropriated and misapplied fiduciary assets by improperly transferring 2320 shares of Exxon and Chevron securities valued at $208,122.80 in violation of 18 U.S.C. §1343 (Wire Fraud) and Section 27 of the Exchange Act  (15 U.S.C. §78aa) and Section 10(b) of the Exchange Act (15 U.S.C. §§78j(b) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

157.    Between April 20, 2012 and April 2, 2013 using the illicit instruments drafted by Defendant Candace Freed, Defendants Anita Brunsting, and Amy Brunsting, acting trustees de son tort, unlawfully, knowingly and willfully misappropriated and misapplied fiduciary assets in excess of $38,000 by paying personal legal liabilities with trust funds from a trust bank account in violation of 18 U.S.C. §1344 (Banking Fraud) and 18 U.S.C. §1343 (Wire Fraud) and §2 (aiding and abetting).[8]

158.    Plaintiff Curtis, as a beneficiary and the de jure trustee for the Brunsting trusts, has fiduciary duties interfered with and prevented by the racketeering activity, has beneficial

---

[8] Please see appendix A attached here to for a chart of event dates, transactions and mediums employed

property interests in the assets so misapplied and has suffered tangible injury to business and property as a direct and proximate result of all the tortious acts herein claimed.

## CLAIM 44 - Conspiracy to violate 18 USC §§242 and 2, & 42 U.S.C. §§1983 and 1985

159.    From an unknown date and continuing thereafter in the Southern District of Texas and elsewhere within the jurisdiction of the Court, each of the Defendants herein named, individually and severally, aided and abetted by persons known and unknown to Plaintiff and aiding and abetting persons known and unknown to Plaintiff, did unlawfully, willfully and knowingly conspire together to participate, and did participate, in a scheme or artifice to deprive Plaintiff Curtis of rights, privileges, and immunities secured and protected by the Constitution and laws of the United States, under color of law and color of official right, statute, ordinance, regulation, custom and policy, in violation of 18 USC §§242 and 2, and 42 U.S.C. §§1983 and 1985.

## CLAIM 45 - Aiding and Abetting Breach of Fiduciary, Defalcation and Scienter

160.    The RICO Defendants understood that Anita and Amy Brunsting owed fiduciary duties to Plaintiff Curtis and that the acts and omissions of Anita and Amy Brunsting were torts and breaches of those duties, and the RICO Defendants aided and abetted Anita and Amy Brunsting's torts and breaches in pursuit of their own unjust self-enrichment anyway.

161.    As an actual consequence and proximate result Plaintiff Curtis has been injured in her business and property and is entitled to damages from all Defendants as joint tortfeasors, for in-concert aiding and abetting breach of fiduciary both before and after the fact, in an exact amount to be proven at trial.

43

162.     Plaintiff is entitled to damages from all Defendants as joint tortfeasors, for in-concert aiding and abetting breach of fiduciary both before and after the fact.

**CLAIM 46 - Aiding and Abetting Misapplication of Fiduciary, Defalcation and Scienter**

163.     The RICO Defendants understood that Anita and Amy Brunsting owed fiduciary duties to Plaintiff Curtis and that Anita and Amy Brunsting had misapplied fiduciary in excess of $300,000 and that Plaintiff Curtis had an inheritance expectancy interest in those assets. The RICO Defendants aided and abetted Anita and Amy Brunsting's continued misapplications of fiduciary anyway.

164.     As an actual consequence and proximate result Plaintiff Curtis has been injured in her business and property and is entitled to damages from all Defendants as joint tortfeasors, for in-concert aiding and abetting misapplications of fiduciary both before and after the fact, in an exact amount to be proven at trial.

**CLAIM 47 - Tortious Interference with Inheritance Expectancy**

165.     The RICO Defendants understood that Plaintiff Curtis had an expectancy of an inheritance right. The RICO Defendants intentionally interfered with Plaintiff Curtis' expectancy. The interference was through acts of fraud and duress and the interference was, thus, tortious.

166.     As an actual consequence and proximate result, Plaintiff Curtis has been injured in her business and property and is entitled to damages from all Defendants as joint tortfeasors, for in-concert aiding and abetting tortious interference with Plaintiff Curtis' inheritance expectancy, both before and after the fact, in an exact amount to be proven at trial.

## IX. Continuity

167.    The law and economics of development focuses its attention on the effects that well-functioning legal and judicial systems have on economic efficiency in the development of nations. As studies have shown, a factor that has greatly retarded commerce in developing nations is the imperfection of the law and the uncertainty in its application. Entrenched corrupt practices within the public sector (i.e., official systemic corruption) hamper the clear definition and enforcement of laws, and therefore commerce is impeded.

168.    Systemic corruption within the public sector can be defined as the systematic use of public office for private benefit that results in a reduction in the quality or availability of public goods and services (Buscaglia 1997a). In these cases, corruption is systemic <u>when a government agency only supplies a public good or service if an otherwise unwilling transfer of wealth takes place from an individual or firm to the public sector through bribery, extortion, fraud, or embezzlement.</u>[9]

169.    Widespread corruption is a symptom that the state is functioning poorly. In fact, the entrenched characteristic of official corrupt practices is rooted in the abuse of market or organizational power by public sector officials. Many studies have already shown that the presence of perceived corruption retards economic growth, lowers investment, decreases private savings, and hampers political stability. Moreover, foreign direct investment has demonstrated a special negative reaction to the presence of corruption within the public sectors in developing countries showing that the degree of corruption in importing developing countries also affects the trade structure of exporting countries.

---

[9] Although published in a 1999 the Hoover Institute Article written by Eduardo Buscaglia describes the Harris County Probate Court racketeering enterprise operations with this statement and is on all fours with the facts of the case in point.

170. The multi-billion dollar Probate industry is an illicit wealth redistribution empire run by morally bankrupt judges and attorneys, supported by an army of tax-dollar fed "judicial administrators," and social workers that George Orwell would marvel at.

171. Harris County Probate Court has become the enterprise out of which public corruption operates an institutionalized theft cartel, involved in redistributing the assets of our elderly, and most vulnerable citizens, amongst a cabal of corrupt judges, lawyers and "board certified professionals".

172. The very people who occupy offices of public trust charged with the preservation of public justice, with the advent of absolute judicial impunity from civil claims, have become the worst organized cartel of predatory criminals in the history of this nation. Genovese, Luciano, Bonanno, Gambino, Lucchese, Capone, Cohen, Nitty, and the Krays would be drooling with envy and admiration, as they could never have built such an invasive and successful criminal empire in the private sector.

173. Judicial Corruption Enterprise activities involve kidnap, carjack, assault, murder, armed robbery, extortion, false arrest, malicious prosecution, denial of due process and false imprisonment, amounting to color of law human trafficking and domestic terrorism. The root cause for all of this institutionalized organized criminal and terrorist activity can be traced to more than one scheme to defraud, but those schemes are but variations on a limited number of known artifices.

174. Amongst the main culprits is the perversion and expansion of the 17th Century English common law doctrine of limited judicial immunity, into a doctrine of absolute criminal impunity where public corruption flourishes because there are no deterrent consequences.

175.    Once having crossed the solid demarcation between right and wrong, the line begins to grey until, one day, it becomes completely invisible.

176.    The notion that these people can operate with criminal impunity has led to an environment where the appearance of legitimacy is no longer of any real importance and the displays of criminal intent have become more than blatant. It has become a trade practice in the state Courts of this nation.

177.    Plaintiff Curtis is one of those victims, as were Elmer and Nelva Brunsting, Carl Brunsting, Willie Jo Mills, Ruby Peterson, Helen Hale, Olga De Francesca, Doris Conte and countless others both known and unknown to Plaintiffs.[10] The Estate of Nelva Brunsting, the Brunsting Trusts and the Brunsting heirs and trust beneficiaries were among the victims.

## X. Jurisdiction over Conduct Affecting Interstate Commerce

178.    All federal crimes are treated as commercial[11]. Pursuant to Article 1, Section 8, Clause 3 of the federal Constitution, the United States Congress has exclusive jurisdiction over commerce amongst the states (the Commerce Clause).

179.    Article VI, Section 2, of the U.S. Constitution is known as the Supremacy Clause because it provides that the "Constitution, and the Laws of the United States … shall be the supreme Law of the Land." It means that the federal government, in exercising any of the powers enumerated in the Constitution, must prevail over any conflicting or inconsistent state exercise of power.

---

[10] These names are well known to anyone who ever heard the phrase "Probate Mafia" and bothered to do a google type search to find out what is meant by the phrase.

[11] 27 C.F.R. 72.11

47

180.　　The RICO statutes were designed by Congress to combat organized crime in both the public and the private sectors and specifically provides a civil right of claims for injuries to business or property as a result of a pattern of activity involving two (2) or more of the listed predicate acts. That criterion has been satisfied as herein delineated.

### XI. Affirmative Pleading on Doctrines of Immunity

181.　　Fraus Omnia Vitiat.

182.　　There is no judicial immunity to civil liability for non-judicial acts, anti-judicial acts or RICO Predicate Acts forming a pattern of racketeering activity, as none of these types of conduct can be said to be judicial functions even when disguised as such.

183.　　Article III, Section 1 of the Constitution for the United States of America, specifically creates the U.S. Supreme Court and gives Congress the authority to create the lower federal courts. Congress used this power to establish 13 U.S. Courts of Appeals, 94 U.S. District Courts, the U.S. Court of Claims, and the U.S. Court of International Trade.

184.　　The U.S. Supreme Court is the only court of general jurisdiction in the federal system, all other federal courts are courts of limited jurisdiction created and empowered by Congressional statute.

185.　　Chief Justice Marshall, writing for the Court in Cohens, 19 U.S. at 404 observed:

*It is most true that this Court will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid; but we cannot, "Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds."*

186.    The list of predicate acts specifically enumerated at 18 U.S.C. §1961(1) includes §§371, 1346 and 1951 each of which requires a public corruption/color of law element.

187.    To argue that a judge is immune from a public corruption statute if acting within the four walls of a court room and exempt if not acting in his public capacity is a very precise statement that judges are above the law and that the victims of public corruption related deprivations of rights have no remedy and, thus, no rights.

188.    42 U.S.C. §1983 clearly states an exception to actions brought against judicial officers. That one exception provides pre-requisites to injunctive relief in actions brought against judicial officers. To conclude that Congress did not intend a private right of claims against judges under §1983 is to render the language of the statute superfluous, which the rules governing statutory construction will not allow.

*42 U.S.C. §1983 Civil Action for Deprivation of Civil Rights (emphasis added)*

*Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, **except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.** For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.*

*(R.S. § 1979; Pub. L. 96–170, § 1, Dec. 29, 1979, 93 Stat. 1284; Pub. L. 104–317, title III, § 309(c), Oct. 19, 1996, 110 Stat. 3853.)*

189.    There is no privity defense, no attorney immunity defense and no judicial immunity exception to the federal Racketeer Influenced Corrupt Organization statutes. The

language of the Act differentiates between criminal and civil liability and explicitly provides private parties with civil remedy for injuries to property and business caused by a pattern of racketeering activity involving two (2) or more of the predicate acts defined at 18 USC §1961(1). The RICO Act provides for criminal penalties in Section 1963 and provides private litigants with civil remedy in section 1964(c).

190.    Several predicate act statutes, mostly codified in Title 18 of the United States Code, provide for federal prosecution of public corruption. Among these are the Hobbs Act (18 USC §1951), the mail and wire fraud statutes (18 USC §§1341 & 1343), the honest services fraud provision (18 USC §1346), the Travel Act (18 USC §1952), the federal official bribery and gratuity statute, (18 U.S.C. § 201 enacted 1962), the Foreign Corrupt Practices Act (FCPA) (enacted 1977), the federal program bribery statute, 18 U.S.C. § 666 (enacted 1984) and the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 USC §§1961-1968 enacted in 1970). Each statute directly addresses public corruption and most of these are specifically identified as RICO predicate acts at 18 U.S.C. 1961(1).

191.    The recent plea bargain and sentencing of Texas State 404th District Court Judge Abel Limas to six years in federal prison for violating 18 U.S.C. §§1343 (Honest Services Wire Fraud), §1346 (Honest Services Fraud) and §1951 and 2 (Hobbs Act Extortion), clearly verifies that these public corruption statutes apply to judges by operation of the RICO statutes[12].

192.    According to the Indictment, Limas accepted paltry sums as bribes, in return for ad litem appointments and other favorable judicial treatments. Counts 1-8 were that Limas:

---

[12] Case 1:11-cr-00296 Filed in TXSD on 03/29/11

a.  Accepted $600 for the continuation and subsequent termination of a probation revocation proceeding in violation of Texas Penal Code 36.02(a)(2) (bribery).

b.  Accepted $700 in exchange for changing the terms of a criminal defendant's appearance bond in violation of Title 18 United States code sections 1951 and 2.

c.  Accepted $1,500 for changing the terms of a criminal defendant's conditions of probation to permit the defendant to report by mail rather than in person in violation of Texas Penal Code section 36.02(a)(2) (bribery).

d.  Accepted $1,800 in a scheme or artifice to defraud in violation of title 18, United States Code, sections 1343 and 1346.

e.  Accepted $8,000 for favorable judicial rulings on motions, case transfers, and other matters in civil cases for the benefit of participating attorneys in violation of Title 18, United States code, section 1951 and 2, and in violation of Texas Penal Code section 36.02(a)(2) (bribery).

f.  Accepted $4,500 for an ad litem appointment in a civil case in violation of Texas Penal Code section 36.02(a)(2) (bribery).

g.  Accepted $5,000 for denial of a motion for sanctions and other judicial acts in violation of Title 18 United States Code sections 1951 and 2, and in violation of Texas Penal Code section 36.02(a)(2).

h.  Accepted $2,000 for the modification of the terms of probation and dismissal of charges against a criminal defendant in violation of Title 18 United States Code sections 1951 and 2, and in violation of Texas Penal Code section 36.02(a)(2).

193.    This cancerous judicial black market plague has spread like wildfire throughout the state court systems whether family law court, juvenile, traffic, probate or any other municipal level judicial arena on the state wide level.   They have all become criminal racketeering enterprises and the root cause for each of these obscenities is "impunity" by any other name.

194.    The cases of convicted Judge Abel Limas (6 years), convicted attorney Marc Rosenthal (26 years) and convicted Texas State Senator Jim Solis (47 months) are not isolated specific instances of public corruption, but limited examples of a national public corruption pandemic. Congress, in drafting the RICO statutes, determined public prosecutorial resources were insufficient to address this problem and specifically provided for private civil remedy.

195.    Imposition of an enlarged version of the judicially created English common law doctrine of limited Judicial Immunity to foreclose private claims for civil remedy against judges under the RICO and civil rights statutes, has nurtured a contagion of public corruption throughout all three branches of government, is in direct opposition to the clearly expressed intentions of Congress in providing such remedy, is a violation of the separation of powers doctrine and, as the learned Chief Justice Marshall expressed, "*treason to the constitution*".

196.    Article I Section 8 Clause 3 of the federal Constitution grants exclusive jurisdiction over interstate and foreign commerce to Congress. Given that all federal crimes are commercial the nexus with interstate commerce is inarguable and the notion that state court judges are absolutely immune from 42 U.S.C. §1983 or 18 U.S.C. §1964(c) actions ignores the very clear language of those sections and violates the supremacy clause.

## XII. Aiding and Abetting, Fraud, and the Texas Attorney Immunity Doctrine

197.    "Attorney Immunity" is a vague expression. Any civil immunity an attorney has is strictly limited to the litigation context and does not include actively engaging in an organized criminal color of law enterprise involving RICO predicate act conduct.

198.   The RICO Defendant attorneys understood that the conduct of their clients was tortious and criminal and the lawyers helped the clients with the conduct thinking only to stuff their own pockets, showing no regard for ethics or law.

199.   Conduct sufficient to state a claim of a racketeering conspiracy including predicate acts of extortion §1951, Obstruction §371, Honest Services §1346, Impartial Forum §242, Illegal Wiretap §2511, Mail Fraud §1341, Wire Fraud §1343, Banking Fraud §1344 and Securities Fraud 15 U.S.C. 78 et seq., is not within the scope of legal representation and cannot be excused as part of the attorney's discharge of his duties to his client, even when masqueraded under the litigation umbrella. (The Litigation Privilege)

200.   Acts constituting knowing substantial assistance, sufficient to state a claim for in-concert aiding and abetting RICO predicate act crimes, torts and breaches of fiduciary committed by the client, are sufficient to establish in-concert liability of the attorney. There are no exceptions.

201.   In reading the text and legislative history of the RICO act, the Fifth Circuit has interpreted that Congress intended the act to strike at criminal conduct characterized by at least two consequential dimensions. The offenses must be of a degree sufficiently serious not only to inflict injury upon its immediate private victims, but also to cause harm to significant public processes or institutions, or otherwise pose threats to larger societal interests worthy of the severe punitive and deterrent purposes embodied in the statute.

202.   These aims and structure are somewhat akin to those reflected in the Clayton Act, 15 U.S.C. §15, after which RICO civil remedies were patterned.

203.   Both statutes bring to bear the pressure of "private attorneys general" on a serious national problem for which public prosecutorial resources are deemed "inadequate"; see also

Sedima, 473 U.S. at 489; Genty v. Resolution Trust Co., 937 F.2d 899, 912 (3d Cir. 1991) ("Congress obviously had much more in mind than merely providing compensation for individual RICO victims when it authorized RICO civil actions. Indeed, the harm of racketeering is dispersed among the public at large, including draining resources from the economy, subverting the democratic process and undermining the general welfare.")

204.    This construction accords with the legislative intent of RICO. As explained by the Supreme Court, the purpose of the Act was to address a problem which Congress perceived "was of national dimensions." Turkette, 452 U.S. at 586. Specifically, in the Statement of Findings and Purpose of the Organized Crime Control Act of 1970, Title IX of which encompassed RICO, Congress declared that the activities of organized crime that prompted the legislation "weaken the stability of the Nation's economic system, harm innocent investors and competing organizations, interfere with free competition, seriously burden interstate and foreign commence, threaten the domestic security, and undermine the general welfare of the Nation and its citizens." Statement of Findings and Purpose, Organized Crime Control Act of 1970, Pub. L. No. 91-452, 84 Stat. 922, 923 (1970).

205.    Congress did not distinguish between public and private Organized Crime. Public corruption and criminal abuse of the state judicial office has become the number one threat to the security of the people of this nation. The creation of the RICO act as exemplified by the "Statement of Findings and Purpose" and the inclusion of public corruption requisite statutes among the list of predicate acts at 18 U.S.C. §1961(1) clearly indicates a congressional intention to curb public corruption and abuse of the doctrines of immunity, by a dishonest self-protection criminal racketeering industry.

206.    The protection for criminal conduct in Texas has also been expanded to include wrongful conduct by attorneys under the Texas Attorney Immunity Doctrine, which has also led to the corruption and criminal takeover of our state judicial institutions.

207.    Congress never intended to immunize state-court judges from federal civil rights suits nor from federal Racketeering suits and a doctrine of judicial immunity implemented by the judiciary to protect a corrupt judiciary from legislation designed to protect the public interest from corruption violates the Separation of Powers Doctrine and undermines the public's confidence in the legitimacy of the government of this Nation.

### XIII. Affirmative Pleading on Conspiracy and Statutes of Limitations

208.    Before the Court are allegations of public corruption involving a conspiracy to deprive the People of Texas and others of the honest services of elected public officers. The conduct complained of is only a small part of a complex multi-layered, multi-faceted criminal industry run by state court  judges, who act with impunity with the full collusion, cooperation and participation of attorneys, court appointed administrators, social workers and others.

209.    Federal conspiracy laws rest on the belief that criminal schemes are equally, or even more reprehensible than are the substantive offenses to which they are devoted. The Supreme Court has explained that a "collective criminal agreement—[a] partnership in crime—presents a greater potential threat to the public than individual delicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality."[13] Moreover,

---

[13] Zacarias Moussaoui was convicted of conspiring to commit the terrorist attacks that occurred on September 11, 2001, United States v. Moussaoui, 591 F.3d 263, 266 (4th Cir. 2010); Wadih El-Hage was convicted of conspiring to bomb the U.S. embassies in Kenya and Tanzania, In re Terrorist Bombings, 552 F.3d 93, 107 (2d Cir. 2008).

Members of an Atlanta street gang were convicted of conspiring to engage in drug trafficking, among other offenses, United States v. Flores, 572 F.3d 1254, 1258 (11th Cir. 2009); motorcycle gang members were convicted of conspiracy to traffic in drugs, United States v. Deitz, 577 F.3d 672, 675-76 (6th Cir. 2009).

observed the Court, "[g]roup association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish. Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked." Finally, "[c]ombination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed." In sum, "the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise."

210.    Conspiracies and acts in furtherance are considered a single continuing act for limitations purposes. The equitable doctrines of tolling and estopple apply to these claims.

### XIV. Affirmative Pleading on Public Corruption

211.    Public corruption involves a breach of public trust and/or abuse of position by federal, state, or local officials and their private sector accomplices. By broad definition, a government official, whether elected, appointed or hired, may violate federal law when he/she asks, demands, solicits, accepts, or agrees to receive anything of value in return for being influenced in the performance of their official duties.

212.    Public corruption poses a fundamental threat to our national security and way of life. It impacts everything from how well our borders are secured and our neighborhoods protected...to verdicts handed down in courts...to the quality of our roads, schools, and other

---

Dominick Pizzponia was convicted on racketeering conspiracy charges in connection with the activities of the "Gambino organized crime family of La Cosa Nostra," United States v. Pizzonia, 577 F.3d 455, 459 (2d Cir. 2009); Michael Yannotti was also convicted on racketeering conspiracy in connection with activities of the "Gambino Crime Family," United States v. Yannotti, 541 F.3d 112, 115-16 (2d Cir. 2008).

Jeffrey Skilling, a former Enron Corporation executive, was convicted of conspiracy to commit securities fraud and mail fraud, United States v. Skilling, 554 F.3d 529, 534 (5th Cir. 2009); Bernard Ebbers, a former WorldCom, Inc. executive, was likewise convicted of conspiracy to commit securities fraud, United States v. Ebbers, 458 F.3d 110, 112 (2d Cir. 2006)

government services. And it takes a significant toll on our pocketbooks, wasting billions in tax dollars every year.[14]

## XV. DAMAGES

213.    Plaintiff Curtis is one of five beneficiaries of the Brunsting Family of Trusts, who has been deprived of the enjoyment of her beneficial interests, forced to incur expenses and fees in effort to obtain the use of her property, and has suffered extortionist threats of injury to property rights and has suffered fraud upon both state and federal courts committed by corrupt court officers in furtherance of a pattern of racketeering activity herein delineated with a particularity.

214.    As an actual consequence and proximate result Plaintiff Curtis has been injured in her business and property in an exact amount to be proven at trial.

215.    Plaintiff Munson is a multi-disciplinarian with skills that include but are not limited to information systems engineering and paralegal, among several other skilled crafts. Munson has worked diligently as a paralegal on the Curtis v Brunsting lawsuit for more than four years, in effort to obtain justice for Ms. Curtis, only to be frustrated by a blatantly corrupt probate court and its officers herein named.

216.    As an actual consequence and proximate result of the racketeering conspiracy and the obstruction, intentional delay, refusal to administer justice and other means and methods employed, Plaintiff Munson has been diverted away from other productive pursuits and has thus suffered tangible losses to his property and business interests in an amount to be proven at trial.

---

[14] https://www.fbi.gov/about-us/investigate/corruption

## XVI. Prayers for Relief

217.    Plaintiffs incorporate by reference herein all allegations set forth above, and by this reference incorporate the same herein and makes each a part hereof as though fully set forth below.

**WHEREFORE**, Plaintiff prays for judgment against Defendants, each and every one of them, for the following:

I.      An award of compensatory, punitive, exemplary, and enhanced damages in an amount sufficient to make Plaintiffs whole and to deter such future conduct by these Defendants, others of their kind and those who may be so disposed in future;

II.     For prejudgment and post judgment interest thereon at the maximum legal rate according to proof at trial;

III.    An award of reasonable costs and expenses incurred in this action, including counsel fees and expert fees as allowable under the Title 15, 18, 28, and 42 sections asserted;

IV.     An award of treble damages consistent with 18 U.S.C. §1964(c);

V.      Such other legal and equitable relief as the Court may deem Plaintiffs entitled to receive, including a referral of the acts found to be unethical or unlawful herein to appropriate authorities.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

Plaintiff Candace Louise Curtis respectfully signs this complaint under penalty of perjury pursuant to the laws of the United States and declares that it is consistent with the Federal Rules requirement for candor.

Respectfully submitted,

7/2/2016

CANDACE L. CURTIS          Date
218 Landana Street
American Canyon, CA 94503
(925) 759-9020
occurtis@sbcglobal.net

Plaintiff Rik Wayne Munson respectfully signs this complaint under penalty of perjury pursuant to the laws of the United States and declares that it is consistent with the Federal Rules requirement for candor.

Respectfully submitted,

7/2/2016

RIK WAYNE MUNSON          Date
218 Landana Street
American Canyon, CA 94503
(925) 349-8348
blowintough@att.net

**Appendix A**

### APPENDIX A

| From | To | Date | Format | Purpose |
|------|----|----|--------|---------|
| **Misapplication of Fiduciary Wire and Banking Fraud Selected Violations of 18 USC §§1343 & 1344** | | | | |
| Anita Brunsting | Anita Brunsting | 5/27/2011 | EFT 18 USC §§1343, 1344 | Misapplication of Fiduciary $461 |
| Anita Brunsting | Anita Brunsting | 6/6/2011 | EFT 18 USC §§1343, 1344 | Misapplication of Fiduciary $2358.75 |
| Anita Brunsting | Anita Brunsting | 6/27/2011 | EFT 18 USC §§1343, 1344 | Misapplication of Fiduciary $2364.34 |
| Anita Brunsting | Anita Brunsting | 7/6/2011 | EFT 18 USC §§1343, 1344 | Misapplication of Fiduciary $2976.35 |
| Anita Brunsting | Anita Brunsting | 7/15/2011 | EFT 18 USC §§1343, 1344 | Misapplication of Fiduciary $7242.83 |
| Anita Brunsting | Anita Brunsting | 7/18/2011 | EFT 18 USC §§1343, 1344 | Misapplication of Fiduciary $1998.19 |
| Anita Brunsting | Anita Brunsting | 9/6/2011 | EFT 18 USC §§1343, 1344 | Misapplication of Fiduciary $999 |
| Anita Brunsting | Anita Brunsting | 9/23/2011 | EFT 18 USC 18 USC §§1343, 1344 | Misapplication of Fiduciary $4767.00 |
| Anita Brunsting | Anita Brunsting | 10/4/2011 | EFT 18 USC 18 USC §§1343, 1344 | Misapplication of Fiduciary $2930.00 |
| Anita Brunsting | Anita Brunsting | 10/19/2011 | EFT 18 USC 18 USC §§1343, 1344 | Misapplication of Fiduciary $2033.00 |
| Anita Brunsting | Anita Brunsting | 11/3/2011 | EFT 18 USC §§1343, 1344 | Misapplication of Fiduciary $102.52 |
| Anita Brunsting | Anita Brunsting | 11/7/2011 | EFT 18 USC §§1343, 1344 | Misapplication of Fiduciary $10,000 |
| Anita Brunsting | Amy Brunsting | 11/7/2011 | EFT 18 USC §§1343, 1344 | Misapplication of Fiduciary $10,000 |
| Anita Brunsting | Anita Brunsting | 11/8/2011 | EFT 18 USC §§1343, 1344 | Misapplication of Fiduciary $3224.51 |
| Anita Brunsting | Anita Brunsting | 3/13/2012 | EFT 18 USC §§1343, 1344 | Misapplication of Fiduciary $10,000 |
| Anita Brunsting | Amy Brunsting | 3/13/2012 | EFT 18 USC §§1343, 1344 | Misapplication of Fiduciary $10,000 |
| Anita Brunsting | Anita Brunsting | 5/25/2012 | EFT 18 USC §§ 1343, 1344 | Misapplication of Fiduciary $5000 |

# Contents

I. Verified Complaint ..................................................................................................... 2

II. Jurisdiction ............................................................................................................... 2

III. Parties ..................................................................................................................... 3

DEFENDANTS .............................................................................................................. 3

PLAINTIFFS ................................................................................................................. 9

IV. CLAIM 1 ................................................................................................................ 10

18 U.S.C. §1962(d) the Enterprise ............................................................................. 10

Harris County Probate Court No. 4............................................................................. 10

The Vacek Law Firm a.k.a. Vacek & Freed PLLC ................................................... 11

The Mendel Law Firm, LP.......................................................................................... 11

Griffin & Matthews.................................................................................................... 12

Crain, Caton & James ................................................................................................ 12

Bayless & Stokes ....................................................................................................... 12

MacIntyre, McCulluch, Stanfied & Young LLP ....................................................... 13

V.  Enterprise in Fact Association .............................................................................. 13

Harris County Tomb Raiders a.k.a. The Probate Mafia ........................................... 14

CLAIM 2 ...................................................................................................................... 14

The Racketeering Conspiracy 18 U.S.C. 1962(C) ................................................... 14

VI. Purposes of the Racketeering Activity ................................................................. 19

Commercial Purpose .................................................................................................. 21

VII. Means and Methods of the Racketeering Conspiracy ......................................... 24

VIII. Predicate Acts and Actors .................................................................................. 27

CLAIM 3 (Honest Services) 18 U.S.C. §1346 and 2................................................ 27

CLAIM 4 - (Honest Services) 18 U.S.C. §1346 and 2 ............................................. 29

CLAIM 5 - (Honest Services) 18 U.S.C. §1346 and 2; ............................................ 29

CLAIM 6 - (Wire Fraud) 18 U.S.C. §1343 and 2; ................................................... 29

CLAIM 7 - (Fraud) 18 U.S.C. §1001 and 2;............................................................. 29

CLAIM 8 (Theft/ Hobbs Act Extortion) Texas Penal Codes 31.02 & 31.03 and 18 U.S.C. §1951(b)(2)  and 2; ....................................................................................................... 29

CLAIM  9 (Conspiracy to Obstruct Justice) 18 USAC §371; ................................. 29

CLAIM 10 - (Honest Services) 18 U.S.C. §1346 and 2; .......................................... 30

CLAIM 11 - (Fraud) 18 U.S.C. §1001 and 2;........................................................... 30

CLAIM 12 (Theft) Texas Penal Codes 31.02 & 31.03/ Hobbs Act Extortion 18 U.S.C. §1951(b)(2) and 2; ..................................................................................................... 30

CLAIM 13 (Conspiracy) 18 USAC §371 and 2; ...................................................... 30

CLAIM 14 (Illegal Wiretap) Texas Penal Code 16.02 and 18 U.S.C. §2511 and 2.................... 30

CLAIM 15 - Dissemination of illegal wiretap Recordings by mail 18 U.S.C. §§1341 and 2 ...... 31

CLAIM 16 - Illegal Wiretap (Tampering and Manipulation)..................................... 31

CLAIM 17 - Illegal Wiretap (Tampering and Manipulation).................................... 32

CLAIM 18 - Illegal Wiretap (Manipulation)............................................................. 32

CLAIM 19 - illegal wiretap (Manipulation) ............................................................................ 32
CLAIMS 20 and 21 Illegal Wiretap, in Concert Aiding and Abetting: Spoliation, Destruction or
Concealing Evidence 18 U.S.C/ §§1512(c) conspiracy 1512(k) & 1519 and 2 ............................ 32
CLAIM 22 - Conspiracy to Obstruct Justice ........................................................................ 33
CLAIM 23 – Conspiracy Re: State Law Theft/ Extortion - in Concert Aiding and Abetting ...... 34
CLAIM 24 - State Law Theft/ Hobbs Act Extortion 18 U.S.C. 1951(b)(2) and 2 ...................... 35
CLAIM 25 - State Law Theft/Hobbs Act Extortion 18 U.S.C. §1951(b)(2) and 2 ..................... 35
CLAIM 26 – Wire Fraud 18 U.S.C. §§1343.......................................................................... 35
CLAIM 27 - State Law Theft/Hobbs Act Extortion 18 U.S.C. §1951(b)(2) and 2 ..................... 36
CLAIM 28 - Mail Fraud 18 U.S.C. §§1341 ........................................................................... 36
CLAIM 29 - State Law Theft/Hobbs Act Extortion 18 U.S.C. §1951(b)(2) and 2 ..................... 36
CLAIM 30 – Wire Fraud 18 U.S.C. §§1341 .......................................................................... 36
CLAIM 31 - State Law Theft/Hobbs Act Extortion 18 U.S.C. §1951(b)(2) and 2 ..................... 37
CLAIM 32 - Mail Fraud 18 U.S.C. §§1341 ........................................................................... 37
CLAIM 33 - State Law Theft/Hobbs Act Extortion 18 U.S.C. §1951(b)(2) and 2 ..................... 37
CLAIM 34 – Mail Fraud 18 U.S.C. §§1341 .......................................................................... 37
CLAIM 35 - State Law Theft/Hobbs Act Extortion 18 U.S.C. §1951(b)(2) and 2 ..................... 37
CLAIM 36 - Mail Fraud 18 U.S.C. §1341............................................................................. 37
CLAIM 37 – Tampering with Federal Judicial Proceeding by False Affidavit 18 U.S.C. §371,
1621 and 2............................................................................................................................ 38
CLAIM 38 - Spoliation, Destruction or Concealing Evidence 18 U.S.C/ §§1512(c) Conspiracy
1512(k) and 1519 and 2 ....................................................................................................... 38
CLAIM 39 - Forgery on Internal Revenue forms 18 U.S.C. §§287, 371, and 1001 and 2.......... 38
CLAIM 40(a-d) - Forgery & False Instruments, Aiding and Abetting Theft, Banking, Wire, Mail
and Securities Fraud (Texas Penal Codes 31.02 & 31.03 & 18 U.S.C. §§1001 and 2)............... 39
CLAIM 41 - Misapplication of fiduciary in excess of $300,000.00 Texas Penal Code Thefts
§§31.02, 31.03, 32.45 (against elderly person Tex. Pen. Cd. 32.45(d)) ..................................... 40
CLAIMS 42(a–q) Wire, Mail, and Banking Fraud 18 USC §§1341, 1343, 1344 and 2 .............. 40

IX. Non-Predicate Act Civil Claims for Damages..................................................................... 41

CLAIMS 43 (a-j) Section 27 of the Exchange Act (15 U.S.C. §78aa) and Section 10(b) of the
Exchange Act (15 U.S.C. §§78j(b) and Rule 10b-5 promulgated thereunder (17 C.F.R. §
240.10b-5)............................................................................................................................ 41
CLAIM 44 - Conspiracy to violate 18 USC §§242 and 2, & 42 U.S.C. §§1983 and 1985.......... 43
CLAIM 45 - Aiding and Abetting Breach of Fiduciary, Defalcation and Scienter..................... 43
CLAIM 46 - Aiding and Abetting Misapplication of Fiduciary, Defalcation and Scienter ......... 44
CLAIM 47 - Tortious Interference with Inheritance Expectancy............................................... 44

IX. Continuity ...................................................................................................................... 45

X. Jurisdiction over Conduct Affecting Interstate Commerce..................................................... 47

XI. Affirmative Pleading on Doctrines of Immunity .................................................................. 48

XII. Aiding and Abetting, Fraud, and the Texas Attorney Immunity Doctrine............................ 52

XIII. Affirmative Pleading on Conspiracy and Statutes of Limitations ........................................ 55

XIV. Affirmative Pleading on Public Corruption....................................................................... 56

XV. DAMAGES ................................................................................................................... 57

XVI. Prayers for Relief ............................................................................................... 58

Appendix A  ............................................................................................................... 60